We have two cases on our calendar that are going to be heard together. The first is KCGM, as we've been asked to refer to him, v. Decker and Carol Williams Black v. Decker. We're going to hear first from Decker. Good afternoon, your honors, and may it please the court. Mary Ellen Brennan from the U.S. Attorney's Office on behalf of the government. The Supreme Court has held that mandatory detention of certain criminal non-citizens under Section 1226C for the duration of removal proceedings is constitutional because it serves legitimate government purposes. First, of ensuring the non-citizen's appearance at those proceedings and second, of protecting the public by making sure that the non-citizen doesn't commit further crimes. Do you think the statute contemplates indefinite detention? No, your honor. The Supreme Court made clear in Des Moines that the statute, and in Jennings, that the statute doesn't contemplate indefinite detention, that the detention under the statute does have an end point, the end of removal proceedings. But if removal proceedings take long, as they often do, given that we need to reconcile federal and state systems with a categorical approach in determining what felonies might make someone a criminal alien subject to deportation or inadmissible, sometimes those removal proceedings can be very prolonged. And I'm interested in knowing what the government's position is about whether, if so prolonged, through no kind of tactical delay by a non-citizen, there's any point at which a bond hearing is constitutionally required. The government acknowledges that there could come a point when the Constitution would require a bond hearing and that detention under this statute is subject to constitutional constraints. But it shouldn't be based on a fixed point in time. How would we identify what that point is? I didn't see, I saw you were kind of rejecting the Matthews v. Eldridge frame, and just referring to an extraordinary case in which someone might be deserving of a bond hearing. But I didn't see any proposal for how we would identify when the point of unconstitutionality came, where not release was required, but a simple hearing. Well, if we look at Damore and Jennings, in remanding Jennings, although the Court didn't reach the constitutional questions, the Court did emphasize that due process is flexible and depends on an analysis of the particular circumstances that are required, of what's required in the particular circumstances. What is the point? I mean, when do we reach the point when the Constitution requires a bond hearing? The Court would need to look at all of the circumstances of the case and the underlying removal proceedings to, in the context of whether the valid purposes articulated by the Supreme Court are being served. For example, in Damore, the Supreme Court there acknowledged that the detention in that case, the non-citizen there was detained for six months, that it had gone on longer than average. And in acknowledging that, the Court pointed out that the non-citizen there had requested a continuance to further prepare his application. It sounds like a bit of a concession or at least a change in the government's position that you're now acknowledging that at some point the Constitution requires a bond hearing and a district court should conduct that inquiry. No, it's not a change in the government's position, Your Honor. We do acknowledge in our briefs that in extraordinary circumstances, detention under this statute may raise due process concerns and call for a bond hearing. But our position is still that, at least as a constitutional matter, that doesn't happen at a fixed point in time. Well, we're not talking about a fixed point in time. We're talking about what factors is it important to take into consideration that would bear on when the Constitution would require a bond hearing. And that's obviously quite different from when the Constitution would require release. It's simply where there would be a discussion and an adjudicator would determine whether there was a risk of flight or whether there was a potential for dangerousness for the person to be released and so on. Yes, Your Honor. What factors do we look to? District courts have looked at things like the length of detention, the nature of the underlying crime that caused the notice to appear to be issued, and the reasons for the prolongation, whether it was assertion of rights, such as rights acknowledged by international law, or whether it seemed to be made for a tactical reason, or whether the government had caused the delay. What factors can you tell us to point to in making a determination that the time has come where the Constitution requires a hearing? Well, with respect to some of the factors that you just mentioned, Your Honor, it would be appropriate for courts to look at the length of the detention and to evaluate the length in the context of, as you just said, the reasons for the delay, which requires looking at the facts of the case, things like who requested continuances and why, why are the proceedings taking the amount of time they're taking, the complexity of the case, what motions and applications have been filed, things like that, and looking at the case as a whole in the context of the valid purposes of the detention. And again, the government acknowledges that as time goes on and as the duration grows, so would the due process scrutiny. But the government seems to argue that the longer the detention, the more incentive there will be for the individual to abscond if released, and so we should be even more hesitant maybe to conduct a hearing. Am I misinterpreting your argument? No. The government does make that argument, and that's true that that interest doesn't necessarily diminish over time, but the government acknowledges that in extraordinary cases, when detention becomes extraordinarily long, there could be circumstances where that factor, the time, would outweigh even the interest. Well, again, I'm asking for your help in identifying what would make the circumstances extraordinary. You also seem to point to the reasons for who caused, who caused, with air quotes, the delay and requests for adjournment and needing to get counsel or also assertion of rights that are recognized by federal law. And it seems still to suggest, you seem to suggest that if an incarcerated person, a detainee, chooses to pursue an appeal of an IJ decision or to seek cancellation of removal or asylum, that the assertion of those rights in a way should be penalized by chalking that up to a delay on his side so that he's paying for asserting those rights with detention. Am I, again, wrong in understanding the government's argument? Well, Your Honor, it is true that a court should factor in circumstances like whether the non-citizen filed an appeal, and that's not to penalize the person, but the court contemplated into more that- Isn't that the effect still, though? I mean, if we're supposed to look at who on the docket, who requested or to whom should be ascribed the additional time before removal proceedings are complete, and one reason for the prolongation is pursuing an appeal, I think the government was suggesting that if you're going to pursue the appeal, you have to put up with the detention. Is that wrong? Well, the government is suggesting that the length of the detention could increase depending on what happens in the underlying proceedings and that any due process analysis has to take into account the reasonable time it may take the government to adjudicate appeals and things like that. Again, into more that's a- If the petitioner is exercising his rights, for example, to try and get a lawyer to appeal, is that held against him in this analysis in the government's view? No, it's not held against him, but if- The petitioner caused a delay. Well, again, the statute mandates detention because of a decision by Congress that these particular noncitizens pose a danger and a flight risk, and the Supreme Court said that's constitutional and also recognized that the time that the detention would take is flexible depending on the amount of time it would take the government to decide. Put in the context of the case, Judge Cronin's case, the petitioner sought or there were six requests for adjournments for things like getting a lawyer, etc., etc. Is that a proper basis to say that he should be detained longer and that he's not entitled to a hearing? The fact that he made those requests so he could do things like get a lawyer? The district court- Our position is that the district court decided that correctly, Your Honor. And so why should that be the case? Either get a lawyer or face continued detention? Well, if the purpose of the detention under this statute is to detain certain criminal noncitizens while their removal proceedings happen, a consideration of what's reasonable has to take into account the time that those removal proceedings will take. And, again, if the proceedings drag on for an extraordinarily long amount of time, that's a factor that should weigh more heavily. But to the extent that a noncitizen- If we look at Black, for example, in a case like Black's where the detention went on for seven and a half months, but within three and a half months the judge there had decided, essentially had affirmed the- had decided on the charges of removability and his application for cancellation of removal. And then three days after he filed his claim saying that his detention had become prolonged, he- the judge suggested- the judge offered to schedule a merits hearing and he asked for a continuance to further prepare his case. He can do that, but the fact that it- the system was working as it should work in that case. He was- the government wasn't doing anything to delay. He was filing the petitions he wanted to file. And the fact that it took- there wouldn't have been a way to complete his case, you know, in a shorter amount of time. And so the fact that it surpassed six months doesn't- We have to look at those individual facts when we look at whether due process is certain. How long was he ultimately detained? Seven and a half- about seven and a half months, Your Honor. So isn't it the case, though, that in DeMoor, the court was assessing the facial validity of the mandatory detention as a kind of threshold issue. And throughout its decision, it refers to the brief period, the limited amount of time, the 45 days. You know, it looked carefully at the statistics that suggested that an individual was going to be- the removal proceedings would be completed relatively rapidly, really. I think 45 days is what it was focused on, or under 90 days. And I was struck on reading that by how that just infused the court's analysis and how far we are from that in the majority of the- or many of the habeas cases that we've seen, including these two before us now. And, you know, in DeMoor, you would agree that there was no constitutional adjudication with respect to prolonged detention. Isn't that right? Yes. I agree with- that there was no- that it was a facial challenge, Your Honor. But I would point out that, again, the court did discuss the circumstances of the particular case there and the fact that- But, I mean, it was confronted with someone who had been detained for seven months, but that wasn't the focus of the opinion or the appeal. It wasn't the focus of the opinion, but the court, in its decision, didn't indicate that there was a serious constitutional issue with- Well, of course, that wasn't the issue before it, though. It wasn't asked to adjudicate whether seven months was unconstitutional. It was presented with the position that it was unconstitutional ab initio to have a mandatory detention without a bond hearing. Isn't that right? Yes, that's right. But the court didn't express any constitutional concerns. And even in Justice Kennedy's concurrence in DeMoor, when he laid out- when he acknowledged that there might be a circumstance where this type of detention might raise due process concerns, he specifically said that that case in DeMoor didn't raise such an inference. So are you suggesting we should infer from the failure to comment about any concern that there is no concern? I'm suggesting that I think DeMoor can be looked at persuasively as an indication that the Supreme Court- not that there's no concern with detention as it grows, but that that detention- that considering the length of detention has to factor in the valid government purposes and the government's ability to complete removal proceedings, and that that may be longer or shorter depending what happens in the proceedings. So if we were to disagree with you and find that there are due process violations for the government's failure to have conducted a bond hearing with respect to Mr. Black and Geisse, GM, and if we were to pursue the due process notion, wouldn't there be real reasons to adopt a bright line rule as we did in Laura and Shanahan, even though Laura and Shanahan was vacated on other grounds? Because it seems to me unadministrable, ultimately, for the district courts to have a seven-factor analysis potentially that they have to conduct in many places. We have pro se litigants. It's difficult for the government. It's difficult for everyone not to at least create a strong presumption that a bond hearing is required at some discernible time. We've had difficulty identifying all the factors right now as we've discussed. Is there a problem with adopting a bright line rule that after a certain number of months, we should presume that a bond hearing would be appropriate? Yes, Your Honor. I understand that there are practical advantages to a bright line rule, but a bright line rule is inconsistent with the Supreme Court's decisions in Damore and Jennings. And as a practical matter, a bright line rule assumes that the due process rights of every non-citizen held under Section 122060 are violated at the same point in time. But we're talking, of course, just about a bond hearing. We're not talking about release or the factors that the adjudicator would consider at a bond hearing. We're just talking about taking a look at the reasons for the detention, even in the context of a mandatory detention, because we have people who are qualifying under 1226C, ranging from turnstile jumping and petty theft to murder. But the Supreme Court, if we look at Jennings and the holding there that the statute mandates detention without bond until the end of removal proceedings, a bright line rule requiring hearings at six months would, based on the Constitution, would have to be based on the fact that every person's constitutional rights are violated at that time. What's wrong with that? Yeah. Amici suggests that the statute is unconstitutional as a procedural due process matter because there's no mechanism for a hearing at all or a release at all. How do you respond to that? Well, again, in remanding Jennings, the Supreme Court emphasized that due process is flexible, and a bright line rule is the opposite. If there's no opportunity for a hearing, then there's no flexibility there. But there would be an opportunity for a hearing, Your Honor. The courts would look at each case, the individual facts of each case, and what's happening in the removal proceedings in the context of the amount of time that's passed. And, again, as time goes on, we acknowledge that the due process scrutiny should grow, and the cases should be looked at more carefully. On the one theory, we would read into the statute the requirement of a hearing at some point. In essence, are we rewriting the statute? And isn't the more honest answer that it's just unconstitutional because it provides no mechanism to even consider release? That the statute is unconstitutional? The statute is unconstitutional because it provides for detention without any mechanism for release, which is contrary to the language in a number of Supreme Court cases, some in other contexts. But let's say you can't detain someone for too long without at least an opportunity to be heard on release. Again, I, again, the, well, the statute, the Supreme Court did uphold the statute as a facial challenge. As a substantive due process for a limited period of time. But it didn't, it specifically did not address the procedural due process issue. Well, we do acknowledge that the statute, that there is a possibility that on an individualized basis, these individuals detained under the statute would be entitled to a bond hearing based on a- At what point? At what point do you acknowledge that? It would be different points for each case. But it would have to look at what's happening in each case and where the proceedings are. Looking at all the circumstances of the case in the context of the purposes being served by the detention, which are important purposes. And it would be looking at, for example, again, again, if we look at Black's case, it's looking at what motions have been filed. He, again, within three and a half months, the court twice considered his motion challenging that his specific crime constituted an aggravated felony. That was a complicated question and the court considered it twice. The court adjudicated his application for termination of removal. And at that point, there was, the court had done everything that there was in front of him. And the case continued because he chose to seek, he chose to seek an application for asylum and withholding, which he, of course, can do. But that necessarily prolonged the amount of time. Is he penalized for pursuing the remedies that are available to him today? No, but to the extent it extends the time, that's part of the process, the removal process that the statute is for. And so to the extent it prolongs the amount of time it takes to complete that process, that at least has to be taken into account by the courts in evaluating whether the statute is constitutional. Again- And when you say that the purposes, that in assessing whether a hearing is constitutionally required, you would look at the purposes to be served by the statute, which, as I understand, the main purposes were to make sure that the non-citizen shows up at a removal hearing and that the community is safe from any recidivism during that time. But, of course, those are, community safety is what would be considered actually at the bond hearing. And so it's not really, to me, part of what the consideration would be in determining whether the time has come based on all the length of proceedings, the conditions of confinement, for example, whether the person was incarcerated to begin with for the crime of conviction that's a predicate for the NTA, and so on. So I'm still hoping that you will be able to maybe on your, the next time you stand up to speak, that we'll be able to articulate or list the factors that would make the extraordinary case that you've referred to and allow a court to draw the indefinite confinement to at least scrutinize the reasons for the confinement and whether it should continue or not. Yes, you're on. You have reserved three minutes for rebuttal, even though we've gone over. So I'll let you keep that. And now we're going to hear, as I understand the parties have decided that blacks should go first, black fraternity. Is that what you decided? No, KCGM. KCGM. Who is representing that person? Thank you. Good afternoon. May it please the court. Julie Donah of the Legal Aid Society for petitioner KCGM. Just one moment. As the government notes, the Supreme Court has recognized two regulatory goals that can justify immigration detention, protecting community safety and preventing individuals from absconding. But the government doesn't contend that KCGM individually is a danger or a flight. And that demonstrates that the government's interests in the mandatory no bond detention scheme that's at issue in this case are a bit more specific. The government seeks to avoid the administrative burdens of holding bond hearings, and they seek to diminish the risk that individuals who are dangerous or flight risks will be released. And due process requires interrogating whether these specific interests are sufficient to justify the detention without a bond hearing of individuals like KCGM for years on end. Do you think it would be useful to have a list of criteria that the court or the judge should continue at the moment to consider at the moment that this comes before the right tribunal? Yes, Your Honor. And I think that depending on which theoretical approach the court chooses, that would be either length of detention on its own, or it would be the duration and the nature of the detention. The length would be really a procedural due process rule that's generalizable, and the duration and the length and the nature of detention falls more under an individualized substantive due process analysis, which we laid out both of those in our brief. Have you heard our discussion with opposing counsel who said that the person seeking an end to detention should be charged with any length, any detentions that that person caused by seeking review or by asking for a lawyer or whatever? Do you think that's fair? No, and every court that has considered that question has rejected the government's interpretation of that language in Damar or that theory. Tell me why it's not fair to have the person who causes the delay be charged for it. Well, the due process inquiry looks at whether the detention is punitive in intent or in effect, and the effect of being detained while you're litigating your case in good faith and pursuing the legal options that are available to you, that leads to the effect of punitive detention. But the people who are subject to 1226C have already been subject to a criminal conviction, and they've had their opportunity for a Joseph hearing, it is my understanding, at the threshold to confirm that they're in the category of people who are removable. Isn't that right? That's correct, Your Honor. That's not to say there aren't other reasons why they might defeat a removal order. That's right, but simply being removable is not a basis for immigration detention, as the Supreme Court made clear in Zedvitas and as this Court repeated in Velasco-Lopez. Simply being removable is not sufficient. But we have a statute passed by Congress with a lot of legislative history that people were not showing up for their hearings and were disappearing after having been served a notice to appear, particularly people who fell in the criminal category and people who were also engaging in recidivism. And those were goals that Congress reasonably sought to pursue, and that the Supreme Court upheld as a constitutional way of pursuing them at the facial level. Isn't that right, D'Amour? That's right, but Congress did not find that every individual in this category is a danger or a flight risk. No, but the Supreme Court acknowledged, I mean, they did not find unconstitutional taking a kind of facial approach, having this statute mandate detention at the get-go, right? And that's exactly right, Judge Carney. D'Amour was a facial challenge to the statute, and so while it upheld Congress's determination, it did so while it repeatedly emphasized the importance of the brevity of the vast majority of these removal proceedings. And that was a critical part in upholding it as constitutional. And the subset of individuals who are detained, for example, for six months or longer, and certainly in KCGM's case, for 21 months, it's a very small subset of 1226C detention, and they're really not the types of cases that Congress was envisioning when it was thinking that- Where's your data from? It's a very small subset of cases. It's provided in our briefing. In our opening brief, we note some statistics from the Executive Office of Immigration Review. Okay. Let me ask, one concern that some of the district judges who have been dealing with habeas petitions in this manner of proceeding have expressed is that if we were to establish a bright-line rule or if the length of detention were to become the predominant factor in assessing the merits of a habeas petition, that that would provide an incentive for individuals to game the system, if you will, and seek adjournments and delays and pursue rights that maybe they have a very slim chance of prevailing on, just in order to kind of run the clock. And I wonder what your thought is about that. On the one hand, it seems wrong to penalize people for exercising their rights. At the same time, if you have a bright-line rule, there are lots of ways to run the clock, and it could be done for bad faith reasons. Yes, Your Honor. I have a couple of responses to that. One is that there are systems in check in the immigration system to prevent individuals from gaming the system, such as regulations that allow immigration judges to grant continuances only upon a showing of good cause, regulations that authorize the Board of Immigration Appeals to dismiss by summary order appeals that have no substantial basis or appear to be filed simply for the purpose of delay. And we've seen in this circuit, as well as the Ninth Circuit and, to a certain degree, the First Circuit, periods of time when bright-line six-month rules were in place. And the government has data on this, and they haven't pointed to any evidence that providing bond hearings at six months was unduly burdensome or changed the amounts of times that individuals were litigating their cases. Even without a bright-line rule, though, you can imagine that a district court might fear that some applications were being made simply in order to prolong the proceedings and enable the person to get a bond hearing. Yeah, and I think that would be misplaced for the reasons that I indicated, but also because at six months or longer, the immigration judge is very familiar with the case. We know what the case is about. The individual has introduced their claims and applications for relief, and if there seems to be no merit to their proceeding, then that will be reflected in the bond hearing itself, and that's all we're talking about is the bond hearing. How would the bright-line rule work? I mean, when you hit six months, there would be automatically a hearing as opposed to first the filing of a habeas petition? Is that what you envision, I guess, is my question? I think that that would be proper. The government suggests that due process is flexible and you have to look at every individual circumstance. I don't think that the quote in Jennings and the case law that it relies upon supports that argument. It relies on Morrissey, which was a case about parole revocation. The First and the Third Circuits post-Jennings have rejected the concept of a bright-line rule. Did they get it wrong? The Third Circuit, I don't know if a procedural due process argument or a bright-line rule was proposed by the parties in that case. In the First Circuit, I think that a reasonableness analysis and a Matthews procedural due process analysis are both legitimate and there are alternative theories for resolving a case. I think that Judge Lopez's dissent in Reed is more persuasive about the applicability of procedural due process. I would note that the Sixth Circuit in Lee also acknowledged that if it wasn't reaching the substantive due process questions in that case, which caused it to construe the statute more narrowly, it would have granted on procedural due process grounds. But I think the case law has developed in a way that looks at substantive due process individually. This reasonableness analysis, but procedural due process is available as well. Without a bright-line rule, how does a petitioner, one of these people who's detained, get into court? Without a bright-line rule, you have to file a habeas petition. That's what individuals have done in the past. We don't have a bright-line rule, even following Velasco Lopez. Individuals are not able to plead the constitutionality of their continued detention without an adequate bond hearing, so they have to file habeas petitions. Do you have a guess or a thought about what percentage of people who make these habeas petitions are represented by counsel? And what percentage are pro se? I don't have those numbers. There is public interest representation for detained removal proceedings in New York, but that program doesn't squarely cover habeas proceedings, and so it's actually very difficult for individuals to find counsel who can litigate these habeas cases. But I don't have numbers on that, but I think that there's a huge unmet need. It's just that it's not that easy to file a habeas petition as a pro se. That's my understanding, my feeling about it. That's right, Your Honor, because these are complex issues that require analyzing complicated constitutional issues while individuals are in detention facilities. I mean, it's difficult enough for them to even receive mail, let alone do filings. And detention habeas proceedings in KCGM's case lasted, he filed around the seven-month mark and his amended petition around the eight-month mark, and it was decided after he was detained for over 14 months. And so just that length, and that's very typical. It just adds to the constitutional violation, having to litigate these one by one. I see my time is up. Thank you. We will now hear from counsel for Carol Williams Black. Good afternoon, Your Honors. May it please the Court. Amy Belcher on behalf of Amicus, the New York Civil Liberties Union, in support of Mr. Black. We all agree here that at some point detention does become unconstitutional. And I would like to pick up on the discussion about where exactly that point is. It bears repeating that this Court found in Laura that mandatory immigration detention exceeding six months affronts due process. And there's been some discussion today about a bright line. A bright line is appropriate for all of the same reasons that this Court talked about in Laura concerning administrability and fairness. As was just discussed, many people are pro se and unable to bring habeas petitions in federal court. And even where they can, the courts are burdened with these petitions. I think we all would agree that having a bright line makes the regime more administrable. But it's not clear to me what about the Constitution necessarily compels that. We are legitimately looking at the length of duration of the detention, the circumstances of the predicate conviction, the conditions of detention. District courts have come up with seven, eight factors to look at in evaluating whether the Constitution at a given moment compels a bond hearing. Are they wrong to look at those other factors? Fair Your Honor, I think it's important to distinguish between a substantive due process analysis, which does look at the individual circumstances of a case, and a procedural due process analysis under Matthews. And Matthews is the case that says the due process requires flexibility. But it also says that these procedural rules that are shaped by that test are meant to apply to the generality of cases. And in fact, that's the way that test operates. So the court could arrive at a bright line rule through a Matthews analysis. But Matthews could also be read as kind of a just higher level articulation of what the district courts have ended up doing in the specific case of detentions in the immigration field, couldn't it? I'm sorry. In looking at the relative interest of the government and the individual, the risks of erroneous deprivation and so on, it seems to me that some of what the district courts have been doing is kind of carrying out that general framework. And looking at particular factors that apply and that bear on the nature of the detention, the reasons for the detention and so on, in a kind of tailored way. Certainly, I think there is overlap in the analysis, though they are distinct. And absent clear guidance from this court, the lower courts have done a number of different things, considered a number of different factors. It's led to just disparate decisions where you see certain lengths of detention. People receive a bond hearing and not in other cases. Well, maybe I just haven't been understanding. I actually have had difficulty understanding the substantive due process versus the procedural due process here. It seems like what is being asked for is procedural due process, the right to a bond hearing, based on any number of factors regarding the detention and the basic principle that the government doesn't hold people indefinitely without having to prove flight or risk of dangerousness. So what is the substantive due process? What am I overlooking? I think in the substantive due process analysis, Your Honor, the court's focus is on the nature and duration of the detention. And we've talked about the test applied by the Third Circuit in German Santos, where they have prioritized those two, primarily, those two factors. And then in looking at the delay, have said explicitly that even where the government has behaved reasonably in immigration proceedings, detention may still be unreasonable. Now, the government, to the extent they've articulated any test at all, has said that the opposite is true, right? That unless we are able to demonstrate, petitioners are able to demonstrate some type of bad faith, that detention will never be unconstitutional. But that is wrong for all the reasons that we've already discussed. If I can break down a little bit the Matthews analysis here, I think it might help explain the differences in the two tests. This court recently applied a Matthews analysis in Velasco Lopez to a similar procedural due process question of when detention becomes prolonged. And the private interest is identical to the petitioner in Velasco Lopez. In fact, they were detained in the same jail. By six months, the physical, psychological, legal harms resulting from incarceration and immigration detention are profound. And as the court recognized in Velasco Lopez, the longer the duration, the greater the deprivation. So whatever process may have sufficed at the outset of detention may not as detention becomes prolonged. And as for the risk of erroneous deprivation, here is unacceptably high for this group. And even higher, in fact, than it was for the petitioner in Velasco Lopez, who did receive not just one bond hearing, but by the time the court ordered a new bond hearing, it was his third. Here, in contrast, people detained under the statute receive no process before they are able to bring their cases in federal court and maybe obtain a bond hearing. How long, ultimately, did your client serve? How long was he detained? So we are amicus in this case. So I just want to clarify that Mr. Black is not in fact our client. I thought counsel gave the time to you to represent Black? I'm happy to answer the question. Yes, Mr. Black's attorney did, Your Honor. How long did he, is it he or she? He served no time for his criminal conviction whatsoever. And he served seven and a half months on the civil immigration charges in jail before he secured a bond hearing. And that conviction was 19 years old? Over a decade, Your Honor, yes. Over a decade by the time he was served a notice to appear? That's correct. Maybe 19 at the time he received the NTA and over 20 today, 20 years today. Criminal convictions are a bad proxy exactly for that reason. Because there is no requirement that the person's criminal conviction under the statute be close in time to the removal proceedings. Here we have somebody like Mr. Black who had over 20 years ago rejoined his community, rebuilt his life, remarried, has a U.S. citizen stepchild, has a business. There's no reason to think that he presents any type of risk of flight or danger. And that was confirmed when he finally did get in front of an immigration judge. Finally, in the Matthews analysis, the court looks to the government's interest. And as this court found in Velasco Lopez, the government has no interest in detaining people like Mr. Black and Mr. GM who pose no risk of flight or danger. But so I'm confused about that because the very purpose of the bond hearing that's the object of this proceeding is to assess risk of flight or danger to the community. But yet you're pointing to that now and asserting that there is no risk of either. And that that should be part of our analysis. I don't really understand that. Don't we have to look at other things before an adjudicator gets to that at a bond hearing? So that's correct, Your Honor, that because danger and flight are assessed at the bond hearing, the government's interest here really amounts to a minimal administrative burden. And their interest in making sure that no immigration judge gets it wrong, that nobody is erroneously released who should have been detained. Well, there's also a congressional directive that people who fall into this category should be detained. And the government benefits from that presumption for many, many months before we start talking about a bond hearing here, over six months. So, you know, at the court. Where does the six month big income come from? A few places, Your Honor. First, Laura. And Laura based its decision on Zydvitas and DeMoor, which it found entirely consistent with a bright line entitlement. It could be five. It could be seven. It could be eight. It could be, I mean, there's nothing directing that it be six months, right? If one were to adopt, say, a rule. Yes, that's correct. So the Supreme Court has in Zydvitas demarcated six months as an important constitutional boundary for what can be presumptively constitutional detention. So that's where Laura derived that six month figure from. You know, on a substantive due process analysis, I think that this court could find in that detention less than six months certainly would violate due process. But another reason why it's appropriate is, as the court noted in DeMoor, by the time detention reaches six months, the vast majority of those cases have been resolved. And the cases that do remain contrary to the government's representation aren't people who present more of a flight risk. Those are people who have potentially meritorious claims for relief, are fighting to stay in this country, and have every incentive to stay. How can we say that? I mean, how do we know who they are and whether they're as uniform as you describe? Well, as Ms. Stona mentioned, there are all kinds of mechanisms within the immigration system to weed out cases where somebody is frivolously delaying proceedings. So by the time people reach that stage of proceedings, they normally have complicated and numerous claims for relief, as is true in this case. And I'd like to provide the court with the statistics, or at least an approximation of the statistics Your Honors had asked for previously, about the percentage of people who are subject to detention exceeding six months. I mean, really, the government's in a better place to provide these. But in the amicus brief submitted in Casey Jam's case on behalf of New York Civil Liberties Union and the ACLU, on page nine, note four, there's some statistics there showing that it's about under 10% of total people detained under the statute. Can I just ask, Mr. Black was released at some point? That's correct, Your Honor. And just why isn't the case moved? Are the proceedings still pending? I understand in the other one, it's not moved. But why isn't the Black case moved? Mr. Black filed, actually, a motion to dismiss in this case, arguing that it was moved and the government opposed on the basis that it has an interest in re-detaining him. And in fact, that's what the government is attempting to do here. They are attempting to re-detain Mr. Black, even though an immigration judge has found that he doesn't present a risk of flight or danger. Do you think the case is moved, then? This is more of a question for the government. The government is probably in the better place to answer this, as they opposed the motion. Thank you. I see that I am out of time, if I may briefly conclude. Like Mr. Velasco Lopez, Mr. Black was neither a flight risk nor a danger to the community, but he was unable to prove it through the procedures that were available to him. For these reasons, Amicus encourages this court to affirm the district court's decision. Thank you. Three minutes remain for Decker. Thank you, Your Honor. Ms. Brennan? Thank you. If I could make two quick points. First, Judge, to return to the factors that you mentioned, Judge Carney, the government would agree that some of those factors are relevant, but not all. And also, I would emphasize that they would have to be addressed on a case-by-case, individualized basis. What factors are relevant? The length of the detention, the reasons for the delay, what applications were filed to the extent that that's relevant to the amount of time the proceedings take. But factors, I believe you mentioned a factor of what the crime is that was committed,  because with this statute, Congress has already made the determination that these particular crimes, non-citizens who committed these crimes pose a danger and a flight risk. And so petty theft and turnstile jumping, I think those were what was at issue in German Santos, right? Maybe, Your Honor. As well as murder. But that's what the courts. In D'Amour, I believe the Ninth Circuit in D'Amour had addressed the crimes that the non-citizen there had committed and said that they were ordinary and not egregious, and the court still upheld the congressional mandate of a categorical determination that these particular non-citizens. At the age of the crime, would that not be relevant? No, that shouldn't factor in, Your Honor, because, again, this- 19 years earlier wouldn't be relevant. No, that shouldn't be relevant. To the issues of safety, for example. No, because the, no, Your Honor, that shouldn't factor into the analysis. The analysis should, again, look at the length of the proceedings itself, so that would be the reasons for the delay and, again, what applications are filed. Those would be the most important. So the applications are filed, I mean, an application for asylum, for example, so that's kind of seems to me the same as the reasons for the delay. Yes, it is similar, Your Honor. Yes. And at the age of the crime or whether the person served any, as long as they qualify under 1226C, that's in the story. Is that right? Yes, Your Honor. Well, we should be looking at the circumstances of the time in relation to the delay and the circumstances that relate to the purposes of facilitating removal. And not conditions of confinement. For example, someone's in a penal institution as if they're incarcerated as a criminal, no difference. No, Your Honor. Those wouldn't bear on the purposes of detention as articulated by the Supreme Court. Again, the purposes of the detention are what would be addressed in the bond hearing, right? Risk of flight and dangerousness. And so I don't understand why we would be looking at those to decide whether the person deserves a hearing or is required to have a hearing. Well, again, that's based on, again, the Court's analysis in DeMoor where the Court acknowledged that the length of the detention depends on what happens in the underlying proceedings and that the reason that this categorical determination is constitutional is because it serves these valid purposes. And that was just in response to the facial challenge to whether mandatory detention was okay at the get-go. Yes, Your Honor. Well, even Justice Kennedy, in discussing a potential as-applied challenge, pointed to circumstances where there was an unreasonable delay by the government and said that, and not just that, but a delay that would cause a court to question whether the purposes of the detention were no longer to facilitate removal but to incarcerate for other reasons. So that further supports that the analysis should take into account whether the detention is actually serving a purpose of facilitating removal. And again, as the time continues, the time itself might weigh more heavily in the analysis, but the Court would still need to look at all of the circumstances that bear on why the time is continuing. In terms of the length of detention, does the six-month period have any special significance? No, Your Honor. That is the government's strong position that there is no reason to draw a line at six months. And again, DeMoore suggests that at least detention isn't always unconstitutional at six months. But we know that most of these cases are resolved within six months. Isn't that what opposing counsel said? That may be true, but that doesn't mean that detention necessarily becomes unconstitutional at six months. As I said, it doesn't make it unconstitutional. But isn't it true that most of them are resolved before six months, and by the time it gets to six months, we're dealing with the hard cases? That may be true, Your Honor, and that's why it is important to look at the circumstances of the case. And if I could just – that gets to my second point, which is to your questions about whether looking at what's happening in the case and whether they've asked for relief or continuances is penalizing. DeMoore itself says that the continuances sought and appeals filed should be part of our relevant factor in the analysis. Ultimately, all we're talking about is a hearing, not release, correct? Yes. It's just whether the person should have a hearing. Yes, Your Honor. And it may be that the answer is he still should be detained. Yes, Your Honor, but to decide whether – because the statute mandates detention to decide whether the Constitution requires a hearing, the court needs to look at all of the facts and circumstances of the case. Again, the reason for the delay, what applications have been sought. It's hard to determine whether the conditions are constitutional or the reasons are constitutional without examining them at a hearing. Right? Sorry, could you – I don't think I understand your question. It's hard to decide whether the detention is unconstitutional unless there is a hearing at which you consider the different factors. If you don't have that hearing, you can't – you don't know whether the detention is constitutional or not. Well, the Supreme Court has said that the categorical determination of flight and danger is constitutional, so – – from a substantive due process point of view. Right. Without addressing the procedural due process. Yes, Your Honor. And for a very short period of time. For a short period of time, but I – the factors that would go into – the factors that the court has suggested go into looking at the constitutionality aren't – I think that a court in habeas would still look at all the circumstances of the case to see if a hearing is required. Thank you. Thank you. Thank you all for a very good argument. I will reserve the decision. Thank you, Your Honor. I will ask the clerk to adjourn court. Court is adjourned. Thank you.